UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 4:20-CR-371-SDJ |
| | § | |
| ALEX CHAVEZ (2) | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Alex Chavez's Motion for Revocation or Amendment of Detention Order Pending Judicial Proceedings. (Dkt. #38). The Government responded in opposition, (Dkt. #46), and the Court held a hearing on the motion. Having considered Chavez's motion, the Government's response, the record, the arguments presented at the hearing, and the relevant law, the Court concludes that Chavez's motion should be **GRANTED**.

### I. BACKGROUND

**A. Chavez is Charged with Drug-Trafficking Crimes**

In early November 2020, law enforcement received information regarding a group in Mexico that was trying to secure cocaine to sell in the Dallas area. In connection with this attempted transaction, law enforcement obtained the phone number for Gerardo Reyes-Nevarez—Chavez's codefendant. Reyes engaged in negotiations for the purchase of the cocaine and, on November 24, coordinated with law enforcement's confidential informant to meet at Gloria's Restaurant in Frisco,

Texas, to consummate the transaction. Reyes stated that his cousin[1] would follow him in a separate vehicle and would bring money as a down payment for the cocaine.

Reyes and the confidential informant met at the restaurant and began discussing the terms of the deal. Reyes then called in the separate vehicle. Reyes and the confidential informant then walked outside to this vehicle where Chavez, a passenger in the vehicle, purportedly exited the vehicle, opened the trunk, and opened a backpack in the trunk containing approximately $58,830 in United States currency. Reyes then directed Chavez to leave so that Reyes and the confidential informant could conduct further negotiations on the details of the transaction. Chavez departed and remained in a Chipotle restaurant nearby until Reyes and the confidential informant finished their negotiations. These negotiations included a discussion of the total payment required and the total quantity of cocaine being purchased. Once these negotiations concluded, Reyes exited the restaurant and was immediately arrested. Chavez was arrested later that day by the Collin County Sheriff's Office. Following his arrest, Reyes stated to law enforcement that Chavez knew about the amount of cocaine being exchanged and that Chavez was involved in the planning related to the cocaine purchase.

Chavez and three codefendants have been indicted for Conspiracy to Possess with the Intent to Distribute Cocaine, in violation of 21 U.S.C. § 846, and Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. §§ 1956(h) and 1956(a)(2)(A). (Dkt. #24). The charge against Chavez for conspiracy to distribute cocaine, which is

---

[1] Chavez's brother testified that he has never met Reyes and has no idea who Reyes is or how Chavez met him.

alleged to involve 5 kilograms or more of cocaine, carries a term of imprisonment of not less than ten years and not more than life.

After holding a hearing on the issue of detention, United States Magistrate Judge Christine Nowak determined that Chavez should be detained pending trial. (Dkt. #33). Chavez then filed his motion for revocation of the magistrate court's detention order.

**B. Chavez's Background**

Before the magistrate court and this Court, Chavez presented the testimony of his brother, aunt, and cousin concerning his background. These witnesses confirmed that Chavez is a United States citizen who has lived in the Dallas area his entire life. Prior to the COVID-19 pandemic, Chavez worked for a company selling and installing blinds. From April 2020 until his arrest, Chavez worked for his brother, Carlos, remodeling homes. Chavez resides with his grandparents and Chavez's two children in Garland, Texas, and Chavez's girlfriend is currently pregnant with his third child.

Chavez's brother confirmed that a number of family members live in Mexico, and that Chavez visits them occasionally. According to the Government's border-crossing data, in recent years Chavez has crossed the border at Laredo, Texas, on September 2, 2012, September 26, 2016, October 31, 2016, December 20, 2016, June 25, 2019, and August 25, 2020.

Chavez's brother, Carlos Chavez, and his cousin, Angelica R. Chavez, both offered to serve as third-party custodians should Chavez be released pending trial. Chavez's testifying family members also urged that, given Chavez's longstanding and

close family ties in the Dallas area, together with his employment history and lack of a criminal record, he should not be considered a flight risk or a danger to the community.

The Government presented the testimony of Special Agent Daniel Padilla, who opined that Chavez is a flight risk because he has family in Mexico who likely would shelter him should he flee there.[2] The Government also argued that, because Reyes stated to law enforcement that Chavez knew about and helped plan the cocaine transaction, Chavez's involvement was more significant than as a mere courier of the down payment. However, on cross-examination, Agent Padilla acknowledged that Reyes could have mischaracterized the extent of Chavez's involvement in the drug transaction and that some of Reyes's statements regarding Chavez's involvement appear to be contradictory.[3] The Government further argued that the mere fact that Chavez was entrusted with delivering approximately $58,000 as part of the transaction demonstrates the level of trust placed in Chavez by the drug organization

---

[2] The Government's counsel also argued and stated in its questions to Agent Padilla that Chavez is a particular flight risk because, at the time of the cocaine transaction in question, there was a state warrant out for Chavez's arrest for failing to appear before a Dallas County Court concerning charges for driving with an open container of alcohol. However, the Court takes judicial notice of Dallas County's criminal court records for this pending charge and notes that the warrant did not issue for Chavez's arrest until *after* his detention on November 24 for the instant offense. The arrest warrant was issued not because Chavez had failed to make any required appearance before the Dallas County Court but was rather issued upon motion by Chavez's bondsman who alerted the county court of Chavez's detention in the instant matter. Thus, the county warrant is not at all probative of whether Chavez would refuse to adhere to this Court's conditions of release, as the Government argues, because the warrant was not issued as a result of Chavez's refusal to comply with the county court's orders.

[3] For instance, Agent Padilla acknowledged that, in recordings leading up to the transaction, Reyes stated that he was collecting money to make the down payment but, after arrest, Reyes stated that the money was Chavez's.

for which Chavez and Reyes were purportedly working and shows that Chavez played a significant role in the conspiracy.

## II. LEGAL STANDARD

Under 18 U.S.C. § 3145(b), a person ordered detained by a magistrate judge may seek review of the detention order in district court. The district court's review is de novo. *United States v. Fortna*, 769 F.2d 243, 249 (5th Cir. 1985). The court has discretion to "support what the magistrate has actually ordered with additional findings based on its independent consideration of the record before the magistrate and the additional evidence adduced before it." *Id.* at 250.

## III. DISCUSSION

A rebuttable presumption arises in this case that no condition or combination of conditions will reasonably assure the appearance of Chavez as required and the safety of the community because there is probable cause to believe that Chavez committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act. *See* 18 U.S.C. § 3142(e)(3). However, Chavez has carried his burden to produce evidence tending to rebut that presumption. For its part, the Government has not proven by clear and convincing evidence that no condition or combination of conditions of Chavez's release will reasonably assure the safety of any other person and the community, nor has the Government proven by a preponderance of the evidence that no condition or combination of conditions will reasonably assure Chavez's appearance at trial. For these reasons, Chavez will be released pending trial.

**A.  The Bail Reform Act**

The Bail Reform Act, 18 U.S.C. § 3142, governs the release and detention of defendants awaiting trial. A judicial officer may order a defendant detained pending trial upon a finding that the government has shown by a preponderance of the evidence that "no condition or combination of conditions will reasonably assure the appearance of the person" or by clear and convincing evidence that "no condition or combination of conditions will reasonably assure . . . the safety of any other person and the community." 18 U.S.C. § 3142(e); *see also United States v. Rueben*, 974 F.2d 580, 586 (5th Cir. 1992) ("For pretrial detention to be imposed on a defendant, the lack of reasonable assurance of either the defendant's appearance, or the safety of others or the community, is sufficient; both are not required.").

Section 3142(g) provides that a court shall consider the following factors in determining whether a person poses a flight risk or a danger to the community: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) the defendant's history and characteristics, including, among other things, his family ties, length of residence in the community, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and, (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g); *see also United States v. Acosta-Leyva*, 751 F.App'x. 594, 595 (5th Cir. 2019) (per curiam).

In some cases, a rebuttable presumption arises that "no condition or combination of conditions will reasonably assure [1] the appearance of the person as required and [2] the safety of any other person and the community." 18 U.S.C. § 3142(e). The rebuttable presumption arises, among other ways, upon a finding of probable cause to believe that the defendant committed an offense subject to a maximum term of imprisonment of ten years or more under the Controlled Substances Act, 21 U.S.C. § 801 *et seq.* 18 U.S.C. § 3142(e)(3)(A); *see also Rueben*, 974 F.2d at 586 (citing 18 U.S.C. § 3142(e)). Probable cause exists when offenses under the Controlled Substances Act are charged in an indictment. *See, e.g.*, *United States v. Trosper*, 809 F.2d 1107, 1110 (5th Cir. 1987) ("[T]his court stated that the presumption against pretrial release arises when drug crimes are charged in the indictment . . . . It is therefore clear that the presumption was properly applied to [the defendant] upon proof that he had been indicted under the Controlled Substances Act." (citations omitted)).

Section 3142(e)'s rebuttable presumption shifts to the defendant "only the burden of *producing* rebutting evidence, not the burden of persuasion," which remains with the government. *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989) (emphasis added). If the defendant presents "evidence tending to rebut the presumption," the presumption "nevertheless remains in the case and is a factor to be considered." *Fortna*, 769 F.2d at 251; *see also Hare*, 873 F.2d at 798–99 ("[T]he court may still consider the finding by Congress that drug offenders pose a special risk of flight and dangerousness to society."). If the defendant does not present

7

evidence sufficient to rebut the presumption, the court must nevertheless review the Section 3142(g) factors. *See* 18 U.S.C. § 3142(g) (stating that the court "*shall* . . . take into account the available information . . ." (emphasis added)); *see also United States v. Jackson*, 845 F.2d 1262, 1265 (5th Cir. 1988) (stating that Section 3142(g) "*mandates* district court review of certain factors" (emphasis added)). As the Fifth Circuit has explained, the statute thus creates "an unusual set of weights and measures in which the burden of persuasion is on the government, not the defendant, but the presumption may be weighed in the evidentiary balance." *Hare*, 873 F.2d at 799.

## B. The Rebuttable Presumption of Detention

Chavez asserts that the Government failed to prove by a preponderance of the evidence that no combination of release conditions could reasonably assure his appearance at trial and, likewise, that the Government failed to prove by clear and convincing evidence that no combination of release conditions could reasonably assure the safety of the community during Chavez's release. To decide the motion, the Court must first determine whether Chavez is presumed to be a flight risk and a danger to the public and, if so, whether he has presented evidence sufficient to rebut those presumptions.

Section 3142(e)'s rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community" applies in this case but has been rebutted by Chavez. Chavez has been indicted for an alleged violation of 21 U.S.C.

8

§ 846. Under the Controlled Substances Act, Chavez faces a term of imprisonment between ten years and life. The indictment alone provides probable cause to believe that Chavez committed those offenses. *See Trosper*, 809 F.2d at 1110 ("[T]he presumption against pretrial release arises when drug crimes [under the Controlled Substances Act] are charged in the indictment."). Further, the testimony from the investigating officer supports the finding of probable cause. *See Fortna*, 769 F.2d at 252–53 (finding probable cause, in part, using the affidavit of an investigating officer). Moreover, Chavez does not contest that the presumption applies. Therefore, under 18 U.S.C. § 3142(e)(3)(A), the presumption applies, and Chavez was required to produce rebutting evidence. To rebut the presumption, however, Chavez bears "only the burden of *producing* rebutting evidence, not the burden of persuasion." *Hare*, 873 F.2d at 798 (emphasis added).

### 1. Chavez has rebutted the presumption of detention regarding his appearance at trial.

Chavez has produced evidence tending to rebut the presumption that no combination of conditions will reasonably assure his appearance at trial. Chavez's brother, Carlos, testified that Chavez has lived in the Dallas area his entire life and that he currently lives in Garland, Texas, with his grandfather, grandmother, and two children. (Dkt. #33 at 32–33). Prior to Chavez's arrest, he had been consistently employed in the Dallas area, with a brief interruption due to COVID-19-related layoffs. (Dkt. #33 at 28–29, 33–34). Both Chavez's cousin, Angelica, and Carlos have agreed to serve as third-party custodians, should the Court so order, and have

9

testified that they would assist in ensuring that Chavez complies with any conditions of release and appears for further proceedings. (Dkt. #33 at 30).

Based on this direct evidence of his ties to the community, network of family support in the Dallas area, and employment history, Chavez has carried his burden of producing evidence tending to rebut the presumption as to risk of flight. Thus, the presumption that no combination of conditions can reasonably assure Chavez's appearance at trial has been rebutted, but remains a factor to be considered in the Court's analysis. *See Fortna*, 769 F.2d at 251.

### 2. Chavez has rebutted the presumption of detention regarding the safety of the public.

Chavez also produced evidence tending to rebut the presumption that he would be a danger to the public and that no combination of release conditions could reasonably assure the public safety.

Chavez's brother, aunt, and cousin testified that they believed Chavez would not be a danger to himself or others if released. (Dkt. #33 at 30–31, 38, 40). Chavez has no prior criminal convictions. Chavez's brother also testified that Chavez works for him, has maintained steady employment, and that he currently lives with their grandparents in Garland, Texas. Chavez also presented two persons willing to act as third-party custodians for Chavez should he be released. Thus, Chavez has rebutted the presumption that no combination of release conditions could reasonably assure the public safety if he is released pending trial, although the presumption remains a factor to be considered in the Court's analysis of whether Chavez should be detained. *See Fortna*, 769 F.2d 251.

### C. The Section 3142(g) Factors

Having determined that the presumption under 18 U.S.C. § 3142(e)(3) applies, but that Chavez has presented evidence tending to rebut the presumption, the Court must now consider the Section 3142(g) factors to answer the ultimate question of whether the Government has carried its burden of proof. The Court concludes that, having reviewed the Section 3142(g) factors, the Government has failed to prove by a preponderance of the evidence that no combination of release conditions could reasonably assure Chavez's appearance at trial and has further failed to prove by clear and convincing evidence that no such conditions could reasonably assure the safety of the public pending trial. For these reasons, Chavez must be released pending trial.

#### 1. The nature and circumstances of the offenses involved weigh in favor of detention.

The Court must first consider the nature and circumstances of the offenses charged. Chavez has been charged with serious crimes—specifically, conspiracy to possess with the intent to distribute cocaine and money laundering. For the former, Chavez now faces a minimum term of imprisonment of ten years and could potentially be imprisoned for life. The severity of Chavez's potential sentence weighs in favor of detention. *See, e.g., United States v. Stanford*, 630 F.Supp.2d 751, 755 (S.D. Tex. 2009) (finding that a 375-month potential sentence "weighs heavily in favor of detention"), *aff'd*, 341 F.App'x 979 (5th Cir. 2009) (per curiam); *United States v. Almasri*, No. H-07-155, 2007 WL 2964780, at *1 (S.D. Tex. Oct. 10, 2007) (concluding

that a defendant's potential sentence weighed in favor of detention when the defendant faced a *maximum* sentence of ten years).

Chavez's alleged involvement in a drug-trafficking organization is a serious charge regardless of his role in the conspiracy. However, the Court is not convinced by the Government's evidence that Chavez held a high position in the organization such that he should be considered an even more serious offender. Chavez stands accused of having delivered $58,830 in cash as partial payment for the fifteen kilograms of cocaine. (Dkt. #23 at 4–5; Dkt. #33 at 12–13). However, the Government's only evidence that Chavez knew the amount of cocaine involved, the overall amount of money involved, or even what the money was for at all comes from Reyes's statements to law enforcement after having been arrested and read his *Miranda* rights. Agent Padilla admitted on cross-examination that none of Reyes's communications with the confidential informant indicated Chavez's involvement in the planning of the cocaine purchase or any greater role in the alleged conspiracy. In fact, when the time came to discuss the details of the transaction, including price and quantity, Reyes directed Chavez to leave the scene and remain inside a nearby Chipotle until the transaction was completed.

This evidence is insufficient to establish that Chavez poses an increased risk of flight or danger to the community beyond the risk already established by the seriousness of the crime with which Chavez is charged. *See United States v. Lopez*, No. 4:20-CR-179, 2021 WL 40308, at *4 (E.D. Tex. Jan. 5, 2021). The Government contends that Chavez has a significant role within the drug-trafficking organization

beyond his courier role in the instant transaction. But the evidence does not support this claim. As Agent Padilla admitted, up until the transaction at issue, Agent Padilla had never heard of Chavez and all the negotiations with the confidential informant were through Reyes. Further, the bulk of the collateral used to facilitate the cocaine transaction was the deed for Reyes's house—a house that Chavez has no ownership or other interest in. Thus, the only evidence showing that Chavez had a more significant role in the conspiracy is the post-arrest statement of his codefendant that the two men planned the transaction together.

On balance, the Court concludes that, because Chavez's charged offenses are serious, but the evidence at this time shows only a minimal role in the conspiracy, the nature and circumstances of the offenses involved weigh only somewhat in favor of detention. *See Hare*, 873 F.2d 796, 798–99 ("[T]he court may still consider the finding by Congress that drug offenders pose a special risk of flight and dangerousness to society.").

### 2. The weight of the evidence against Chavez weighs somewhat in favor of detention.

The Court must consider the weight of the evidence against Chavez, but "courts have found this factor to be of least importance in the detention determination." *Stanford*, 630 F.Supp.2d at 755 (citing *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986)); *see also United States v. Barnett*, 986 F.Supp. 385, 393 (W.D. La. 1997).

The Government has presented substantial evidence of Chavez's guilt for the charged offenses. Specifically, the Government has direct evidence that Reyes

13

negotiated a cocaine transaction and that, when Reyes called in a courier to deliver the down payment for this transaction, Chavez arrived as a passenger in a separate vehicle, exited the vehicle, and showed the confidential informant a bag containing $58,830 in cash. Moreover, Chavez's codefendant stated to police that he coordinated the cocaine transaction with Chavez. (Dkt. #33 at 21, 23–24). And none of Chavez's family members disputed Agent Padilla's testimony that Chavez had participated in the drug transaction at issue. Further, on cross-examination, Chavez's brother could not account for the $58,830 in Chavez's possession upon his arrest given his Chavez's $1800 to $2000 per month salary. (Dkt. #33 at 34). As stated above, however, whether Chavez had a more significant role in the conspiracy—or whether he had knowledge of the details of the transaction in question—is less supported by the Government's evidence. But because the Government's evidence of Chavez's guilt for the charged offense is strong, this factor weighs in favor of detention, though it is the least important factor.

### 3. Chavez's history and characteristics do not weigh in favor of detention.

The Government has failed to prove that Chavez's personal history and characteristics suggest that he is a danger to the community or a flight risk. The record before the Court does not show that Chavez has ever been arrested for violent conduct or convicted of any crime. The record reflects only one other arrest—the misdemeanor driving-with-an-open-container charge—for which Chavez has not yet been convicted and which does not demonstrate that he is a substantial flight risk or danger to the community. Moreover, Chavez has significant ties to the community,

having lived in the Dallas–Fort Worth area his entire life and having maintained steady employment here.

Further, the Government's evidence of Chavez's risk of flight falls short of what is necessary. In short, the Government's only evidence that Chavez constitutes a flight is risk is that he has family in Mexico whom he has visited no more than half a dozen times in eight years. This familial connection, alone, is insufficient to establish that no combination of conditions will reasonably assure Chavez's appearance at future proceedings, especially in light of Chavez's significant ties to the Dallas area, and therefore the weight-of-the-evidence factor does not favor detention. Thus, this factor favors release.

### 4. The nature and seriousness of the danger to the community do not weigh in favor of detention.

Finally, the Court must consider the nature and seriousness of the danger to any person or the community that would be posed by Chavez's release. While the allegations against Chavez are serious, and drug dealing poses a significant danger to the community, *see Hare*, 873 F.2d at 798–99, the Government has presented no evidence of the danger Chavez poses beyond the nature of the charged offense and the weight of the Government's evidence of guilt. Chavez has never been convicted of a crime and the Government has failed to produce evidence that Chavez holds a prominent role in the drug-trafficking organization involved in this cocaine transaction. The Government also does not allege that Chavez has committed any acts of violence in connection with the charged offenses or that he has otherwise demonstrated he presents a potential risk of engaging in violent conduct.

15

Chavez has maintained steady employment in the community and has offered a reasonable release plan. Chavez's brother and his cousin have each offered to serve as Chavez's third-party custodian, and they have also confirmed that they will ensure Chavez's compliance with all conditions imposed on his release as well as Chavez's appearance at future court proceedings.[4] Thus, this factor weighs against detention.

*       *       *

In sum, while the nature of the charged offense and the weight of the Government's evidence of Chavez's guilt weigh somewhat in favor of detention, the other factors all weigh in favor of release. Without more, the seriousness of the charge alone, combined with the strength of the evidence, does not meet the Government's burden of proving that no combination of conditions will reasonably assure the safety of the public or Chavez's appearance at future proceedings. *See Lopez*, 2021 WL 40308, at *6 (citing *United States v. Cirksena*, 749 F.App'x 488, 491 (8th Cir. 2019) (holding that, though the defendant's drug-trafficking and firearms charges were serious, "[t]he mere charged offenses, alone, are not enough to require pretrial detention")). Therefore, Chavez's motion must be granted.

### IV. CONCLUSION

It is therefore **ORDERED** that Chavez's Motion for Revocation or Amendment of Detention Order Pending Judicial Proceedings, (Dkt. #38), is hereby **GRANTED**.

---

[4] After his arrest, law enforcement also found a handgun in the vehicle's glove compartment, although Agent Padilla admitted that the gun was unloaded and could not be connected to Chavez and may in fact have belonged to the driver of the vehicle. Thus, this evidence bears little weight concerning Chavez's dangerousness.

The magistrate court's order of detention is **REVOKED**. A hearing before United States Magistrate Judge Christine Nowak on appropriate release conditions will be set by separate order. Defendant Alex Chavez shall remain in custody pending the hearing before the magistrate court on conditions of release.

**So ORDERED and SIGNED this 12th day of March, 2021.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE